May it please the court. My name is Randall Callendon and I represent appellant Monica Voss and this, the district court committed reversible error when it granted qualified immunity for basically three reasons. There was no reasonable, that no reasonable officer would have found probable cause to for any reason or any crime. It erroneously held the speech only exception for interference only applied to prosecutions and not arrests. It misapplied Devon Peck, completely misconstruing the purpose of the doctrine to protect officers from innocent mistake. The first is probably the most important and that is the definition of the word put because the appellee says that Monica admitted that she put her children in her car and put is a very vague term. They do not say that they pushed, that she pushed, grabbed or even touched KV who was a teenager by the way. But is that the determinative factor? If she ordered her daughter, child, teenager, if she ordered her don't get in that officer's car, get in my car, aren't there cases that talk about, within the context of the First Amendment defense that talk about interfering with an officer's procedure even though there is no physical act by the person who, the aggrieved person? Well, the interference statute itself says speech only. It doesn't say speech only. I understand that. I guess what I'm making a distinction between speech as in stating things to the officer and speech. I think there's a case that talks about if someone is ordered to or requested to move their vehicle and they say no I'm not going to move my vehicle, that's not a physical altercation and yet it nonetheless would constitute interference. So I'm trying to get you to distinguish between, and I knew we'd get hung up on this word put and I understand your argument because that's a colloquialism, you know, to put something in the car or put someone in the car is a term that could be interpreted either way. But if she ordered her to get in the car, is that not, how does that, what is your case law that says that that too would be protected under the First Amendment exception? Well, um, I would like to point out the state law because it's important because, you know, state laws can expand civil rights as well and this exception for speech only is a Texas, in the Texas Penal Code and so it does not make an exception for, for instance, orders for children. However, let's... So you're saying there's no state case. I'm willing to go with you on the statute. It's Texas state law and I guess within the context of that, there, is there a case under Texas, from a Texas court that makes a distinction between a physical interference and a verbal First Amendment protected statement and an interference by inaction or by ordering someone to do something contrary to the officer. I do not know if there exists such a case. However, once again, I must go right to the statute which says speech only. So that is pretty clear that speech only, it doesn't say speech only, but in cases of ordering things, however, let's get back to the ordering things in the actual word of put. For instance, she admits she put the child in the car, but the appellee does not claim any touching, doesn't even claim that she opened the car door for her. So what we have here is the word put. If one spouse, for example, asks the other spouse, put the teenage children in the car, and the other spouse says, hey, get in the car, and then the other spouse will then ask, well, did you put the children in the car? Yeah, I put them in the car. That doesn't mean they were touched, there was any car door opening, there was no action. If we look at Freeman v. Gore, Freeman Gore even said that there was interruption, but it just doesn't, but it was speech. So we're not saying that speech doesn't delay or impede an investigation. We're not saying that. We're saying that it's an exception. In Freeman v. Gore, the lady was screaming and hollering, and it was admitted by the Gore court, the Freeman v. Gore court, that indeed this did delay and interrupt. I guess the issue is what would every reasonable officer know, right? To overturn the qualified immunity ruling. And here we have Officer Good responding to a claim of child abuse, and then he speaks to the child, and to Ms. Voss's credit, she lets the child go out. Then the child confirms there's been threats and violence, and he then, seeking to segregate the two until the mental health professional comes, says, get in my car, and then the video or the audio is pretty clear. She says, no, get in my car. And when I look at the federal and state law, it's pretty confusing what Officer Good would think at that point. Wouldn't that be interference? She's commanding the daughter to do something opposite from what the, so Hegarty is a federal case. How does he have fair notice that when she's saying do the opposite of what I'm saying, protecting the child? Yeah, go ahead. A couple of reasons. One is actually on the video, he says, you're close to interfering. That indicates that he had contemplated whether she was interfering or not, and had made a determinant at that point that she was not interfering. Furthermore... Yeah, but that's sort of, I mean, that to me goes to Officer Good is just trying to do his job as best he can with awareness of the law. He's saying, don't keep interfering. I'm trying to protect the child. Stop this. And then as soon as the mental health person shows up, okay, fine. The professional has spoken to her and she's okay. She goes back to you, Mom. Wasn't there some statement by the mother in this exchange that she wanted her in her car so she could go ahead and drive her to a mental hospital? Yeah, the reasoning was is that her doctor locally had told her the best place to treat for mental health emergencies is downtown Houston. Yeah, so the police officer is hearing all of this, and go ahead and answer the question. But anyway, as I was stating, regarding the interference, he says, you're almost interfering. Now later on, he might mention something about that there was a crime committed, but of course if an officer can just merely claim on video, you are committing a crime. Oh look, on the video or the audio, I said you were committing a crime. Therefore, you must have been committing a crime. That's for the jury to really decide. This becomes a fact issue on summary judgment, and there is a fact issue there, whether or not. But there's no fact issue that she on the audio says do the opposite of what the police officer has said, right? He says I want to put her segregate protector in the car until the mental health, and she says go to my car. Every crime has to have a scienter, Your Honor, and she has to do this particular crime with criminal negligence. There's no doubt that the mother, who by the way, takes care of three disabled individuals and the mother, and she is a retired detective in sex crimes, and she was retired, so she knows the law herself, but she was concerned also because the young teenager, K.V., made the call from the back bedroom apparently, or made the communication such that the police came over. So what we have here is a mother who is extremely concerned, and then when the officer said hey, don't do that or made some interruption, what happened then was she immediately complied. So it's a fact issue whether she would have the scienter necessary for a crime, because certainly let's say that someone is playing on the radio when they're driving down the street and they accidentally run into somebody and kill them. Well, that person would not be arrested for murder because scienter, scienter is very important, the culpable level is extremely important. So she doesn't meet that culpable level, and that's pretty honest that she's a caring mother. She cares for, she adopted this. Well, but you say that, but the officers operating with knowledge, the young lady comes out of the house and the officer speaks to her without the mother present, without the plaintiff in this case present, and relays to him that she had thrown a pair of scissors or something at her and that this had all culminated with this phone call. So the officer is responsible for the knowledge that he possesses at the time, which of course comes from the teenager. Is that correct before the mother comes out and says, don't get in the officer's car? Well, there are other words that took place, but when the officer, if I'm correct, relates to the fact that she's having a mental health care emergency. And so as a mother, if your child is having a mental health care emergency, go to the hospital. I mean it's basic, it's simple. As a matter of fact, if she didn't do it or didn't offer to do it, you would wonder, okay, the police have just told you this young lady, your daughter, is having a mental health care emergency. Wouldn't you try to solve it? Well, certainly. But that's exactly, my point is that the officer possesses knowledge imparted, correct or not, imparted to him by the teenager herself. And then the mother comes out and says, no, you can get in my car because I'm going to take you. But the officer is thinking that there's already been a confrontation of sorts, including apparently a violent act, at least one violent act. So when we put ourselves in the position of the officer, where is the guidance that he should have employed to say, oh, no, that's okay, go with your mother. I know I said to get in my car, but your mother's going to take care of it, so get into the mother's car. On what basis would he say that? Well, let's look at what transpired. First of all, once again, I've got to get back to the Texas statute, which says speech only. It just says it. I understand that argument. And you can figure out why the Texas said speech only and didn't say speech only except in XYZ. I guess I'm focusing now on what Judge Higginson was talking about, got into the qualified immunity issue, and so that's why my question is based. Well, this is a Texas police officer, and this is a Texas penal code. This is even more direct to the officer in his knowledge, who, by the way, is an experienced officer, not an inexperienced officer. So that's deliberately in the code. So we're not requiring the officer to keep abreast of recent case law from the Supreme Court or from the Fifth Circuit Court of Appeals. We're asking him to be very basic on a very common charge. I do criminal defense work, and interference with public duties is a common charge. As a matter of fact, I've litigated interference with public duties in front of the United States Fifth Court of Appeals on civil rights cases before. So this is not like an uncommon vehicle code regarding how brakes are supposed to operate. This is a common, very common. Well, if you litigate this a lot, you may have found the case that I didn't find. I don't think it was in the briefs, but it was shown to me subsequently Barnes v. State. Is that case familiar, interpreting this 3815 provision where the mother tells the child run from the car when she gets pulled over? Are you familiar? Well, once again, I think we would go back to if that is the case, and I'm sure it is the case, Your Honor, that it seems like a scienter there that she says run from the car, like run away from the police. The court specifically said independently that alone would be interfering because that speech becomes a command to act. It commanded an action. Yes, once again, we've got to get back to the scienter. My client never attended to interfere. As a matter of fact, when the officer objected to her getting into the car to go to the hospital for medical care, she immediately complied. So there was no further action to say no, the officer's wrong, no, you stay in the car, let's put it into drive. None of that happened. Immediately upon the words coming out of the officer's mouth, she complied with the officer. Once again, I thought her declaration is pretty discursive and extensive, which is good. I mean, that's what we've got. But I thought it was pretty clearly, along with the video audio, pretty clear she was telling him, no, my daughter will not be getting into your patrol vehicle. Once again, the video exemplifies that we're talking about speech only. We're not saying that only friendly speech. What are your thoughts on Judge Garwood's Haggerty decision? How would you distinguish that? That's in the briefs. Yeah, the Haggerty decision. Again, it's a very uncooperative, verbally sort of difficult person and a divided opinion. But the majority said that was sufficiently close. Yes, Your Honor.  In the Haggerty case, it was a tense and dangerous situation where an out-of-control victim surrounded by eight attackers and appellant was physically getting in the officer's way, physically getting in the way, preventing him from moving forward. And the reasonableness of this particular kind of conduct consisted of speech only as a factual inquiry for the jury. So if you look at Haggerty, the interference was much higher, getting in people's way. Here, the appellant is just at a distance. The officer never claims he got in the way of anything. And basically, once again, I've got to get back to what her goal was, and it was to bring a child who was having a mental health care emergency to the best hospital she knew. And when the officer told her not to, she complied. So she doesn't have any of the scienter requirement of the crime. Okay. Thank you, counsel. Do you have rebuttal time? Anytime you're ready. Thank you, Your Honors. May it please the court, there are two issues that I want to address. First, there is no genuine issue of material fact that Voss interfered with Deputy Goode's public duties. So the judgment is correct. Second, in any event, there is no genuine issue of material fact that Goode is entitled to qualified immunity. So the judgment is also correct. For the record, I am Justin C. Pfeiffer on behalf of Appalese Gregory G. Goode and Fort Bend County, Texas. Voss interfered and admitted that she interfered in Goode's child protective services ordered welfare check of Voss's minor daughter, K.V. She indisputably interfered by, one, putting K.V. into her car, and, two, failing to follow Goode's instructions. Counsel, when you say that, can we agree at this point that there is no physical interference with what Officer Goode and the other officers are trying to do? Well, it depends, Your Honor, what it means by physical. She certainly gave mandated directions, didn't countermanage her. I mean, she is not physically acting to prevent an officer from doing something bodily. She's not grabbing K.V. Not bodily. That's what his argument is in order to try to cabin this into the exception. We can agree that she is giving – your position is that she is giving commands that are contrary to the officers, which I understand. Can we agree that she is not physically taking action to prevent the officers from doing anything other than vocalizing commands? Vocalizing commands that are contrary to the officers. Counters, right. Right. No, I mean Ms. Voss never touched Officer Goode or McGuigan or the sergeant that was on the scene. Or K.V. Or K.V. Yes, I will submit to that. That says Hagerty is distinguishable. There was no stepping towards or getting in the way of. I would disagree. Hagerty, because she did get in the way. She got in the way by countermanding the instructions, by moving after being told to leave the scene. Goode said, let me do my job. She still continued to argue. So it was verbal interference. Verbal interference. Yes, Your Honor. Well, let me give you an example. But he's pretty categorical about the statute, says that's the exception. Has to be more. Has to be speech plus. Well, this court, Your Honor, this court has repeatedly said that failure to follow directions is after being warned and continuing to fail to follow directions is something for which a reasonable officer can arrest under the standards of qualified immunity. That would apply to her refusal to go inside and get her identification, correct? More than that, Your Honor. It really applies. Let me give one good example of an omission on this put thing. And it's on the videotape. And I'm going to give the citation for the record because I understand that the videos arrived late up here. Dash cam 394593 at 23 hours, 32 minutes, 10 seconds to 25 seconds. And the access instructions are for the 16 seconds are explained at ROA 62914. So Goode told Voss, quote, this is an investigation. You tried to interfere and drive off with her, unquote. Voss immediately admitted the interference by stating, quote, I was taking her to a mental health hospital because you told me that she was in a mental health crisis. What would any mother do? Unquote. So you're saying that the declaration remark about put past tense in the vehicle actually is borne out that she was physically in the mother's vehicle? Yes. Yes. Yes. And that record citation is. So I know where it is in the declaration. It just, from my best review of the record, it seemed like that, whether it's colloquialism, it didn't appear that the video would confirm that the daughter actually ever was in that car. But you say she was. Right. At that video citation. The video doesn't. There are videos that show her in the car. But my point is. In the mother's car. No. In the police car. Not in the mother's car. They didn't start recording until after that. So she she was in the mother's car, but there isn't a record on that. What my point is with this is that she's saying she never put her in the car, but she's admitting on the scene 12 minutes after the arrest that Miss Voss is saying, yes, I did put her in my car. And since Voss admitted this fact from a recording on the scene, it should be admissible as an adoptive statement of a party opponent under federal rule of evidence 801D2B. So that's the evidence that we have, and that's the evidence that we know that it was not a colloquialism. And the magistrate relied on that? No, the magistrate judge relied on her declaration. But I think you're saying to us, unless I'm wrong, that that statement in the audio is confirming what she put in her declaration, which the magistrate relied on. Yes, yes. The declaration statement was when I put KV in the car, I was taking her to a mental health care, and I told good that the magistrate judge did not cite the on the scene record. And it's not even it's on a video, but you don't see anyone. It's an audio from a video, if that makes sense. So they're off scene, but it's recording what they're saying. So but there's other interference as well, Your Honors. Voss, after being warned, failed to follow good's instructions. Good told Voss that allowing her to leave would be interfering. And this is from the audio we cited in our brief at 0 minutes, 29 seconds to 33 seconds. Voss vehemently protested that they take KV with them. And Voss kept telling good to go get a warrant. Good even warned Voss at 51 seconds, 52 seconds that she was about to be taken into custody. Yet Voss continued to interfere. Voss had just put KV in the car against the instructions and just tried to drive away. That's the admission we talked about earlier. Voss continued to try to foist KV on good. You can hear that. Later, Voss refused to comply with good's instructions and walked away. And you can see that. And that's at the dash cam video 394593 at 23 hours, 25 minutes, 12 seconds to 25 seconds. Voss can certainly walk away from good. Not when he told her not to. Because it was a CPS, it was a child protective services investigation, that good and his colleagues needed to complete. They needed to call TechSANA, which is a child protective services partner, for there to be an assessment done at the scene by a mental health professional. That's what the regulations are in Texas, in Fort Bend County, for such a child protective services mandated telephone call, when there's a potentially suicidal child. So all these actions, our position, all impeded good's ability to finish this call  All this is interference. But even so, Voss's evidentiary submissions at summary judgment are absolutely insufficient on these questions. The two other officers at the scene, McGuigan and Sergeant Ellis, signed affidavits that good had probable cause to arrest. We put this at issue in the district court, ROA 215 to 217, in the motion for summary judgment. But neither Voss nor her husband, who are both ex-law enforcement officers, submitted a declaration or an affidavit that good's actions were unreasonable. You can look through it. There's absolutely nothing in there about standard what a reasonable officer would do. Moreover, they did not hire an expert to so opine. These failures preclude any need to even examine the reasonableness of good's probable cause determination because he's entitled to qualified immunity on the first prong, just on the evidentiary record. But more importantly, jurisprudentially, this evidence is sufficient for a reasonable officer to conclude that he had probable cause to arrest Voss for interference. There's a preference for resolution of cases on the clearly established law prong. The Supreme Court recently counseled lower court should think hard and think hard again before addressing both qualified immunity and the merits of the underlying constitutional claim. This is Westby v. District of Columbia 138, Supreme Court 589, Note 7. Here the district court did correctly decide that good did not violate Voss' Fourth Amendment rights. But I think and I want to raise, unless there are other questions about the incident, I want to raise that I believe it would be a much more efficient resolution to hold that Voss failed to articulate a clearly established right. The case laws just do not support her on this. Good is a very good cop who has since been promoted to sergeant, but the question is not whether good is a good cop. The question is whether good's actions were plainly incompetent or show that he knowingly violated the law. But they do cite a whole body of federal and state law, correct? Correct. Freeman, Hegarty, those are ours, and then the Texas case Carney, all of them saying any officer in Texas knows you can't base an interference arrest because of verbal speech, however hostile it is. That's correct, but there's more than speech here because there's she ignored instructions and impeded the investigation. Well, ignoring instructions is a little hard for me mentally to think that's more than speech. But then you said impeded, and the best fact of impeding is having put the daughter in her car? Yes. It's not failing to go get identification? No. You're not relying on that at all? We're not relying on the failure to get identification. But in your brief you say the two crimes are hardly discernible. What I'm saying is that the two that when she went to she failed to get her identification, which is a failure for instruction, but putting her in her car is the main thing we rely upon. I'm trying to understand what you meant in the brief that an officer could, well, you can arrest him for either one because they're hardly discernible. I didn't understand what would be the basis to arrest for failing to a mother walks out of the house startled by all this. She's a deputy sheriff herself from the child abuse unit, and she's saying I'll get a professional for my own daughter, thank you. Now she does it with much more adamancy. But how would you conceivably have authority to arrest someone for not identifying herself as the mother, especially if there's confusion as to whether the mother can even go back into the house to get the documents the policeman appeared to want? I don't see any crime there at all, and I'm wondering if you think those two, well, it's hardly discernible she was nearly violating some other provision. Or is it purely 3815? It's purely 3815. It's purely 3815. Do you agree as to 3815? The district court was wrong in its first reason that 3815 would apply. The district court made some distinction, as he pointed out, between prosecution. Do you remember the statement by the district court? Do you agree that that makes really no sense? Plaintiff's contention in the statute doesn't criminalize speech, only fails for two reasons. First, you know what I'm talking about. I couldn't understand the first reason. The second reason is the one you're urging. It wasn't speech. She physically interfered, and that gets us back to, well, what physical interference? The physical interference isn't as well written as it could be. It should have been written interfering with the investigation, the continuity of the investigation, and failure to follow instructions. I put it in my brief. We have the Duncan Telvey state case. We have a Key v. State case. Both of those are instances of failing to follow instructions, where an officer is basically saying, no, go stand over there, and the person continues to be on the scene. Hagerty is like that as well. Okay, I need to go back and look. Those are two state court cases where the interfering conduct was verbally telling someone to do something opposite? Correct. Yes, Your Honor. Are you familiar with the case I mentioned to him, Barnes? Yes, yes. But you didn't cite it. I don't think that would seem to me quite central to this whole inquiry. I'm familiar with it after when I was preparing. It's not cited in the brief. It's after this, after we got oral argument, I familiarized myself with it. There's one unpublished case of this. Since you did find it, tell me about it. Is that the exact argument you're making? A little bit different. I mean, it's in line with the fact that speech that crosses the line to actual impeding or interfering with an investigation, ongoing investigation, interfering with instructions is well, rather, it crosses over the speech-only threshold. Because it becomes a command to do something physically. Yes. Run. Yes. That's a lot more than a mother saying, I'll take my child to the professional, and the officer saying, no, we'll wait here in my car for the professional. I don't see that, Your Honor, because there's a very clear way that these calls have to be handled, and Good explained that to her, that the protocol was for Texanna to come onto the scene. Okay. And by letting her go off with her mother, that is not having ñ I mean, how do we know that she would have gone to a hospital? Texanna has to come out, has to evaluate. It's all under Child Protective Services guidelines. That's how it goes, bar none, in any county in Texas. Those are the procedures that are supposed to be followed. If those procedures are not followed, then the officer would face a 1983 suit for some other reason. If they drove off. Yes. Her argument depends on the fact being true that she actually was in the car going to be driven off. You wouldn't be arguing the same now if there were just this verbal moment where she says, KV, get in my car, but actually never did. Or would you be in the same posture legally? It would not be a stronger case, Your Honor. I will concede that. But, again, we have the declaration, which is why the declaration of her, and that is what Magistrate Judge Johnson and Judge Lake relied upon. That was their first reason. That still is valid. But we have, which didn't come across, and I'll just reemphasize it because it didn't come across clearly in my briefing because these videos are cumbersome. I recognize that. But when 12 minutes after the arrest, Voss Good tells her, you tried to interfere and drive off with her, and Voss admitted it. Voss responded, I was trying to take her to a mental health hospital because you told me that she was in a mental health crisis. What would any parent do? And it's that tape at 23 hours, 32 minutes, 10 seconds to 25 seconds. It's that 16 seconds of tape that really are a better, more direct citation of the evidence than her declaration, which is what the lower course relied upon. I did want to give Your Honors a case that I didn't cite because it was unpublished, and it gives a pretty good scenario of a similar factual circumstance. It's the Eisenbach v. Zatzkin decision. This is a Federal Appendix 307 from 2018, a review of Judge Ellison. Judge Ellison granted summary judgment on qualified immunity. The officer's wife, and the facts in this case, officer's wife know a delivery truck caused damage to a pole in an apartment complex. Zatzkin, the officer, then located the delivery truck and its driver who was attempting to deliver a package to Eisenbach. Eisenbach complained he wanted his package. When Eisenbach returned to the scene after Officer Zatzkin told him to leave, Zatzkin arrested Eisenbach for interference, and he ended up spending 33 hours in the Harris County Jail. Here Ms. Voss was in cuffs, double, more comfortable cuffs for five minutes. She was only in the back of the patrol car for a minute and a half. No charges were pressed. She was released from the scene. She was only restrained because she was interfering with the ability of the deputies to do their job and perform their protocols with a potentially suicidal minor. Thank you, Counsel. And I just wanted to add, just in summation, quickly, if we do think that it would be easier rather than getting into the merits to the extent, and we appreciate the district court wanting to reach the merits, and they did a very thorough opinion, but it would be a little bit better to have these decided on a clearly established law prong, just from our vantage point as a county. As Judges Ho, joined by Judges Oldham and Smith, noted that going to the merits on every single question has very difficult societal costs. It's contributed to low officer morale. There's crippling shortages in officer recruitment, and it causes division of official energy from pressing public issues and dampening the ardor of public servants. So for those reasons, we would like the court to affirm on the lack of clearly established law. We rest our case on our brief and oral argument and respectfully request that the court affirm the judgment of the district court. Okay. Rebuttal. Regarding the unpublished opinion, there are reasons why opinions are unpublished, and furthermore, the Fifth Circuit court rules say that they should not be used as precedent. So in regards to Eisenbach, that was actually one of my cases, and the difference with Eisenbach was they said that Mr. Eisenbach was told to leave the scene while an officer was talking to an individual, and then he came back to the scene and was next to the individual, so there was physical getting in the way, like Haggerty. She was physically getting in the way. Here, they're not saying she's physically getting in the way. But once again, I've got to get back to speech only. The statute doesn't say speech only if it doesn't interfere. It says speech only is not interference. If I were to say to an officer who's investigating the scene, if I were to say to him, Hey, officer, how are you doing today? Is everything going good? Did you watch that football game? And that slows him down to talk about the football game. I have interfered. There's a reason why it's speech only. In regards to law enforcement lowered morale, this is a retired detective, and I think there's a big reason why you should not be putting people into squad cars and handcuffing people when they have done nothing wrong. That is demoralizing to the public. But it is helpful. You've litigated even some of the cases he's citing. Would you say that Officer Good had really a clear, fair warning? It seems like a really intricate failure to follow a command counts, inaction counts. It isn't that crystal clear for police officers. Because it's a penal code violation, Texas penal code violation, of which he is supposed to know. It's not some esoteric Fifth Circuit ruling where the courts got into a 50-page order, and he's supposed to know about the 50-page judgment or opinion of a court. This is straight out of the penal code. Speech only is not interference. Not speech only if it's a command. Not speech only if this results. It's speech only. But obviously his primary duty is to protect that child, correct? Well, his primary duty is to protect the child. And part of protecting it was to put the child in his custody rather than the woman's responsible adult that the child is seeing is a threat. And so his heavy emphasis was she actually, the mother, actually put her in the vehicle to drive away. With words only, but also it is that he is that protection. But if the kid got in the vehicle, that's words plus action. I would debate that. It was words on her part. The statute never says what a third party does like a witness. But I would like to get back to— How do you distinguish the Barnes decision, which came out in 2006? That's where the mother tells the daughter to run. That was a command to act. This is a command to act. Physically get out of the police car and physically get in my car. Well, there's a huge distinction. First of all, this is the result of a mother who they even admitted on the audio. It says, I am concerned. I don't know the exact words. I am concerned about my daughter. I want to take her to the hospital where she can get some treatment. And then the daughter gets in of her own accord. My client doesn't open any doors, do anything. But then immediately upon the officer saying, no, don't do that, it's returned. So there's no scienter requirement. Once again, there's no culpability here. She has to—every crime, and every officer knows this, you can't accidentally do a crime. You can't accidentally murder somebody by adjusting the radio when you're driving down the road. And I think that's left out of this discussion here. She has to have some culpability. She has none. And this is for the jury. I mean, when the jury looks at this mother who has just been told by an officer your daughter is suicidal, and the mother, who has been dealing with this daughter for a long time, wants to go immediately to the best hospital she knows, there's no culpable mental state there. There's no guilt. So basically what we have here is a statute which clearly says speech only. I mean, speech only is not a crime regardless of whether or not there is some interference because any speech could potentially interfere, such as in the Gore v. Freeman court. Is it children's? If the police say move your car and you don't move your car, you just stay inactive. It would seem like we've said that's speech plus. And then we've got the Barnes case where the woman's verbal command run is speech plus. Here, if the police officer says go to my car and the mother says no, go to my car, it would seem like it would fall in that line of authority. At least it's not clearly established it doesn't. In Children v. Iglesias, the arrestee physically blocked the officer's entry to the scene with the car, so they couldn't even get to the scene of the crime. Vastly different. So what we have here is really a jury issue. I think the jury should weigh all these facts of what they knew at the scene. Here today we've been arguing facts, facts, facts, some law, but facts, facts, facts. Your time's up. You see. I think you've made that argument, and we have it. I don't mean to interrupt you. Thank you, Your Honors. Thank you. Thank you, Counsel. Thank you.